Peter J. Marcello and Penny V. Marcello v. Commissioner. George S. Valentine and Minnie L. Valentine v. Commissioner.
Marcello v. Commissioner
Docket No. 2547-62, 2651-62.
United States Tax Court
T.C. Memo 1964-303; 1964 Tax Ct. Memo LEXIS 38; 23 T.C.M. (CCH) 1877; T.C.M. (RIA) 64303; November 19, 1964
deQuincy V. Sutton, Dixie Towers, Meridian, Miss., for the petitioners. Robert S. Leigh, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following deficiencies against petitioners: Addition to Tax
Sec. 6653(a),
Petitioners
Year
Deficiency
I.R.C. 1954
Peter J. and Penny V. Marcello
1958
$31,910.84
$1,595.54
George S. and Minnie L. Valentine
1958
11,448.17
572.41
The issues for decision are: (1) Whether the net income from the operation of two businesses, known as Ship's Lounge and Latin Quarter should be attributed for the year 1958 to Peter J. and Penny V. Marcello or to George S. and Minnie L. Valentine; (2) whether petitioners Peter and Penny Marcello understated their income from the Ship's Lounge and Latin *39 Quarter on their Federal income tax return for 1958 by $28,116.18 or, alternatively, whether petitioners George and Minnie L. Valentine understated their income from the Ship's Lounge and Latin Quarter on their Federal income tax return for 1958 by $32,756.69; (3) whether petitioners Peter and Penny Marcello understated taxable capital gains reported by them on their 1958 Federal income tax return which arose from the sale of assets of the Ship's Lounge and Latin Quarter; (4) whether petitioner Peter Marcello realized taxable gain in 1958 with respect to the sale of an undivided interest in inherited real estate and, if so, in what amount; and (5) whether petitioners Peter and Penny Marcello or, alternatively, George and Minnie Valentine are liable for an addition to tax under the provisions of section 6653(a) [1] for the year 1958. Findings of Fact Certain documents were presented to the Court on oral stipulation of the parties and they are incorporated herein by this reference. Peter J. and Penny V. Marcello are husband and wife, who reside at 3008 Ridgeway Drive, Metairie, Louisiana. *40 Using the cash basis of accounting, they filed their joint Federal income tax return for the taxable year 1958 with the district director of internal revenue at New Orleans, Louisiana. George S. and Minnie L. Valentine are husband and wife, who reside at 1518 S. Carrolton Avenue, New Orleans, Louisiana. Using the cash basis of accounting, they filed their joint Federal income tax return for the taxable year 1958 with the district director of internal revenue at New Orleans. Peter J. Marcello, the husband of Penny V. Marcello, is the son-in-law of George S. Valentine. On his Federal income tax return for 1958, George S. Valentine (hereinafter sometimes called Valentine) reported compensation of $5,820.16 resulting from his full time employment as a bus driver for the New Orleans Public Service Company, and an alleged loss of $1,040.51 as realized from the operation in 1958 of two bar and lounge businesses known as the Ship's Lounge and Latin Quarter and located at 116 La Salle Street and 1418 Canal Street in New Orleans. The net loss of $1,040.51 reported on Valentine's income tax return for 1958 was detailed in the following schedule attached to the return: George S. Valentine
1958
Operating Ship Lounge
4-1-59 to 9-15-59
Operating Latin Quarter
5-1-59 to 12-31-59
Ship Lounge
Latin Qtr.
Income: Sales
$25,175.45
$33,282.90
Music Machine
1,410.50
$25,175.45
$34,693.40
$59,868.85
Expense: Rent - Bldg. - Ship
$ 2,100.00
Latin Qtr.
2,800.00
Equipment - Ship
1,100.00
Latin Qtr.
1,600.00
$ 7,600.00
Heat, light and water
1,395.84
Payroll
12,253.70
Taxes & licenses
City Liquor
1,000.00
City Occupational
20.00
State Liquor
400.00
State Beer
30.00
State Occupational
20.00
State Sales
1,183.41
City
583.85
Federal Liquor
100.00
F.I.C.A.
285.71
F.U.T.A.
36.76
3,659.73
Federal Amusement Tax
1,946.40
City
387.67
State Unemp. Tax
330.86
Advertising
239.20
Supplies
287.52
Telephone - Tele.
208.12
Linen - Laundry
427.65
Door Man - Latin Qtr.
2,160.00
Merchandise Purchases
30,012.67
60,909.36
LOSS
$ 1,040.51
*41 After unsuccessful efforts by respondent's agents to determine from either Peter J. Marcello (hereinafter sometimes called Marcello) or Valentine exactly who owned and operated the two businesses, and in the absence of facts as to whom the income from the businesses should be attributed, respondent disallowed all deductions (totaling $30,896.69) claimed as expenses for the operation of these businesses and determined that the income resulting from such disallowance was includable in the community income of both Peter and Penny Marcello and George and Minnie Valentine. This determination resulted in respondent increasing the taxable income of the Valentines by $32,756.69 and that of the Marcellos was increased by $28,116.18. All of the adjustments, including that for the increase in business income of $28,116.18, made by respondent to the 1958 income tax return of Peter and Penny Marcello are as follows: Adjust-
Source of Income
Per Return
As Corrected
ments
Salary
$ 900.00
$ 900.00
None
Rental Income
2,700.00
2,700.00
None
Income from coin machines
1,940.00
1,940.00
None
Income from businesses - Lounge & Latin
Quarter
28,116.18
28,116.18
Subtotal
$ 5,540.00
$ 33,656.18
$28,116.18
Long-term capital gains on sales: of inherited property
$ 53,333.32
$53,333.32
of bar known as Monkey Bar
$15,000.00
15,000.00
None
of bar known as Ship Lounge
5,000.00
20,000.00
15,000.00
of bar known as Latin Quarter
7,000.00
12,907.02
5,907.02
Total long-term capital gain
$27,000.00
$101,240.34
$74,240.34
Gain taken into account - 50%
$13,500.00
$ 50,620.17
$37,120.17
Short-term capital gain on sale of Latin
Quarter properties
1,395.97
1,395.97
Taxable capital gain
$13,500.00
$ 52,016.14
$38,516.14
Adjusted gross income - increase
$19,040.00
$ 85,672.32
$66,632.32
*42 Peter Marcello owned and operated the Ship's Lounge and Latin Quarter during the year 1958. Peter Marcello caused both businesses to be operated in the name of George S. Valentine. Although leases or subleases were in the name of George Valentine, the records of the Bureau of Treasury, City of New Orleans, listed Valentine as the owner and operator of the businesses, a beverage permit and an occupational license were issued in his name, various types of Federal, State, and City tax returns were filed in his name, George Valentine acted at all times for and on behalf of Peter Marcello who was engaged in the active operation of the businesses. Therefore, all income derived from the operation of the Ship's Lounge and the Latin Quarter is taxable to Peter Marcello and is not taxable to George Valentine. The following amounts were paid during the calendar year 1958 in operating the Ship's Lounge and Latin Quarter and are allowable as ordinary and necessary business expenses: Rent for buildings
$ 4,900.00
Heat, lights and water
1,395.84
Salaries and wages
12,253.70
Taxes and licenses
4,347.03
Doorman - Latin Quarter
2,160.00
Advertising
239.20
Supplies
287.52
Telephone and telegraph
208.12
Linen and towel service
427.65
Total
$26,219.06
*43 Peter Marcello understated his taxable income from the Ship's Lounge and Latin Quarter for the year 1958 in the amount of $1,897.12. On or about March 6, 1958, Peter Marcello purchased the fixtures, name, stock and merchandise of the business known as Ship's Lounge for $20,000. On or about September 16, 1958, Peter Marcello sold the fixtures, name, stock and merchandise of the Ship's Lounge for $25,000, realizing a long-term capital gain of $5,000. On or about April 1, 1958, Peter Marcello acquired the business known as the Latin Quarter at an initial cost of $4,000. He later purchased bar and lounge equipment and carpets for the Latin Quarter for the total sum of $7,837.31. On or about December 12, 1958, he sold the Latin Quarter for $28,000. The amount of $26,040 was allocated to fixtures and equipment, $100 to trade name, and $1,860 to merchandise. Out of the total gain realized of $14,302.99, the amount of $1,395.97 represented short-term capital gain and $12,907.02 represented long-term capital gain. On July 1, 1955, Louisa Farrugia Marcello (hereinafter called Louisa), the widow of Joseph Marcello, Sr., and her nine children filed a petition in the District Court in and *44 for the Parish of Jefferson, State of Louisiana, in connection with succession of the property of Joseph Marcello, Sr., deceased. The court ordered that Louisa be recognized as the surviving spouse in the community of the deceased, Joseph Marcello, Sr., entitled as such to the ownership of one-half or nine-eighteenths of the property left by the deceased and to a usufruct interest in the other one-half or nine-eighteenths of the decedent's property. The court also ordered that the nine children be recognized as the sole heirs of their deceased father and that each child was entitled to the ownership of an undivided one-eighteenth interest in the property left by the deceased subject to the usufruct vested in the mother. Louisa was born on February 6, 1893. Joseph Marcello, Sr., died in 1952. Included in the inheritance was a certain parcel of land, consisting of approximately 183 acres, designated as Tracts Nos. 9 and 10, Oakdale Subdivision, Section "C" Jefferson Parish, State of Louisiana (hereinafter called Tract C). Tract C was valued for estate purposes at $40,000. On December 26, 1958, Tract C was sold in nine separate parcels of approximately 20.333 acres each by Louisa *45 and the nine children. The purchasers were nine newly organized corporations in which the sellers had no interest. The names of the purchasing corporation were Gems, Inc., Pearl Lands, Inc., Amethyst Lands, Inc., Emerald Lands, Inc., Sapphire Lands, Inc., Garnet Lands, Inc., Topaz Lands, Inc., Ruby Lands, Inc., and Moonlight, Inc. Each of these corporations, organized under the laws of the State of Louisiana, had been initially capitalized for $10,000. After the sales, James J. Culotta, a residential real estate developer and builder and owner of all the stock of the nine corporations, transferred 50 percent of the shares in each corporation to Joseph Connolly, who had participated in prior residential construction developments with Culotta. James J. Culotta transferred the 50 percent stock interests in the nine corporations to Joseph Connolly on the promise and understanding that Joseph Connolly would be responsible for raising the necessary financing for the proposed residential development of Tract C. No other consideration was exchanged. Another development project in which James J. Culotta and Joseph Connolly had joint interests about the time of the sale of Tract C to the *46 nine corporations had failed. Each of the newly organized corporations gave, as total consideration, a negotiable promissory note, dated December 26, 1958, in the principal amount of $111,111.11. Each note was secured by special mortgage and vendor's lien in the appropriate deed of sale for the respective 20.333 acres conveyed to such corporation. Each note was signed in the name of the appropriate corporation by "James J. Culotta, President." Each note provided that payments were to be made in 10 annual installments of $11,111.11 commencing on December 26, 1959. Each note also provided that payments would be made by the respective corporation to the order of Bearer, $111,111.11 for value received, with interest payable monthly at the rate of 6 percent per annum until paid. The notes also included provisions as to the makers and endorsers' waiver of presentment for payment, demand notice of nonpayment and protest. The notes further provide for nonwaiver rights by any delay in the exercise of such rights. The notes were in default from the due date of the first payment with respect to principal and interest. Except in one instance, which will be described hereinafter, no payment *47 has been made on these notes. Each note also bears the personal endorsement of James J. Culotta. The acts or deeds of credit sales were signed for the grantors by Carlos J. Marcello, individually, and as agent and attorney-in-fact for Louisa, Vincent J. Marcello, Peter J. Marcello, Pascal J. Marcello, Joseph Marcello, Jr., Anthony J. Marcello, Salvador J. Marcello, Mary M. Loria, and Rose M. Badalamenti. The power of attorney was dated December 22, 1958, and it appointed Carlos J. Marcello as the true and lawful agent and attorney-in-fact for the mother and the other eight children. Carlos J. Marcello was given the power to sell and deliver, with all legal warranties, Tract C to any person or persons, firms or corporation or corporations, for such price and on such terms and conditions as he might deem fit and proper. Each of the deeds of sale includes a provision that the purchaser agrees, in the event the promissory note is not paid at maturity, that it shall be lawful for the vendor, or any holder or holders of the note, to cause the property to be seized and sold without demand or service of notice of demand for payment or of notice of procedure and without appraisement, to *48 the highest bidder, payable in cash; and that the purchaser confesses judgment in favor of the vendor or any future holder or holders of the note. Each of the acts of sale includes the provision that partial release of any one or more of the lots into which the property will be subdivided will be granted by the vendors upon payment towards the balance due on the above-described note of a sum proportionate to the ratio which the lot or lots sought to be released shall bear to the total number of lots into which the property is to be subdivided. Each act also provides that in order to facilitate the development of the property, or for the construction of streets and/or offsite improvements, the vendors will do all and whatsoever may be necessary in order to subordinate the vendor's lien and mortgage therein granted to any mortgage and/or building contract made by the purchaser for the purpose of construction financing of such development. On November 4, 1959, 10 months after the sale of Tract C, the nine notes were pledged on behalf of the Marcello family and their business associates as additional security for a $540,000 indebtedness. The notes were pledged as cumulative collateral *49 for the loan. Other collateral consisted of (1) a first mortgage on certain motel property; (2) second and third mortgages on other property previously mortgaged to the same person for a prior loan; and (3) certain shares of stock of a motel corporation in which the Marcello family held interests. The pledges made no attempt to segregate the security held between the loan of $540,000 and the previous loans made to the Marcello family or their business associates. On October 16, 1961, Gems, Inc., sold for $110,000 in cash, two tracts of land consisting of 5.72 acres and 6.53 acres out of its 20.333 acre tract, to the Roman Catholic Church of the Diocese of New Orleans. A mortgage release covering approximately 12 acres of the Gems, Inc., lands was executed on behalf of the Marcello heirs and a release of the pledge to the extent of $71,172.50 was obtained from the pledges of the Gems, Inc., note. On May 28, 1962, a Form 1041, United States Fiduciary Income Tax Return, in the name of Estate of Joseph Marcello, deceased, signed by Carlos Marcello, was filed for the year 1961 with the district director of internal revenue, New Orleans, Louisiana, reporting the following: Property sold 12-26-58 - Credit Deed, taxpayer
estate received no money in transaction until
1961
Proceeds of sale received in 1961
$71,172.50
Less: Pro-rata valuation - Cost
12,500.00
Other Costs - Legal & Acctg
2,000.00
Net reportable
$56,672.50
Total acreage - approximately 183 acres
Market value - date of death $454 per acre
Total market value - date of death - $12,500
Estate elects to report on installment basis.
Property sold on Credit Deed 12-26-58 to cor-
porations listed below: Gems, Inc.
$111,111.11
Pearl Lands, Inc.
111,111.11
Amethyst Lands, Inc.
111,111.11
Emerald Lands, Inc.
111,111.11
Sapphire Lands, Inc.
111,111.11
Garnet Lands, Inc.
111,111.11
Topaz Lands, Inc.
111,111.11
Ruby Lands, Inc.
111,111.11
Moonlight, Inc.
111,111.11
$999,999.99
*50 On July 23, 1963, the deeds of sale were amended nunc pro tunc by the nine vendee corporations and Carlos J. Marcello acting as agent and attorney-in-fact for the Marcello family. In the amendments the parties declared that it was their intention at the time the nine sales were made that there be reserved to the vendors the oil, gas, and other mineral rights in the property conveyed in the nine sales, just as though the lands conveyed had been conveyed in one deed. The vendors and vendees declared that the reservation of mineral rights would not be effective as to the properties which were sold by Gems, Inc., to the Roman Catholic Church of the Diocese of New Orleans. Three qualified experts testified during the course of the hearing with regard to the valuation of Tract C - two on behalf of petitioner and one on behalf of respondent. Their respective conclusions as to the value of the land was based in part on a visual examination of the property, an examination of the official Parish records in regard to title and zoning, an examination of comparable properties and an examination of the sales of comparable property. The value of Tract C, based in part on the opinion of these *51 experts, is set forth below. Petitioners did not report the sale of their interest in Tract C on their Federal income tax return for the year 1958. No election was made on the return pursuant to section 453, Internal Revenue Code of 1954, and the regulations relating thereto, to treat the gains on the sale of the properties under the installment method of accounting. In his notice of deficiency dated April 6, 1962, respondent made an adjustment for the long-term capital gain realized by Peter Marcello from the sale of his interest in the inherited property. Peter Marcello's undivided interest in the inherited property was sold in 1958.
The fair market value of the land known as Tract C on December 26, 1958, was $1,800 per acre, or a total value of $329,395 for 183 acres. The fair market value of each of the nine negotiable notes of the nine vendee corporations on December 26, 1958, was equal to 33 1/3 percent of its stated value. Peter and Penny Marcello are liable for the addition to tax under section 6653(a) for negligence and intentional disregard of rules and regulations for the taxable year 1958. George and Minnie Valentine are not liable for *52 an addition to tax under section 6653(a) for the taxable year 1958. Opinion 1. Income from Ship's Lounge and Latin Quarter. This first issue as to whom the income from the Ship's Lounge and Latin Quarter is taxable has been resolved by our findings of fact. We hold that Peter Marcello was the owner and operator of both businesses and that George Valentine was merely acting for and on behalf of Peter. Consequently, all of the income from these businesses is chargeable to Peter Marcello. 2. Expenses. Respondent's blanket disallowance of all expenses incurred and paid in the operation of the Ship's Lounge and Latin Quarter in 1958 was in error. Since the books and records of these businesses were destroyed by fire in April 1961, petitioners had to rely on secondary evidence to support the expense deductions claimed. Based upon our consideration of the evidence presented, we have concluded that expenses totaling $26,219.06 should be allowed. This in turn results in an understatement of income taxable to Peter Marcello in the amount of $1,897.12. 3. Capital gains from sales of Ship's Lounge and Latin Quarter assets. We have found as a fact that Peter Marcello's basis in the assets *53 of the Ship's Lounge was $20,000 in stead of $5,000, as contended by respondent. Peter Marcello has introduced no evidence to disprove the correctness of respondent's determination with respect to the sale of the Latin Quarter assets. Accordingly, we sustain the adjustment made by respondent on that item. 4. Succession property. This issue is identical to Issue 2 (Succession Property) decided in the case of Joseph Marcello, Jr., 43 T.C. - (Nov. 13, 1964), wherein we held that the taxpayer realized a long-term capital gain in 1958 on the sale of his interest in the fair market value of certain notes, taking into account the adjusted basis of the property and the value of the mother's usufruct interest. We reach the same result here. The amount of the taxable gain can be determined in the Rule 50 computation. 5. Addition to tax. Standing alone, the failure of Peter Marcello to report the gain realized in 1958 from the sale of his interest in the inherited property was not due to negligence because it involves a complex legal determination on which there can be an honest difference of opinion. However, Peter and Penny Marcello did substantially understate their taxable income in *54 other respects for the year 1958. In our opinion this was due to negligence and we therefore conclude that they are liable for the addition to tax imposed by section 6653(a). The correct amount can be determined in the Rule 50 computation. Since we have held that none of the income from the Ship's Lounge and Latin Quarter is taxable to George Valentine, it follows that he and his wife, Minnie, are not liable for any addition to tax under section 6653(a). To reflect the determinations made herein, Decisions will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise noted.↩